UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHARON JEAN MENSAH, et al.,

Plaintiffs,

v.

DENIS RIORDAN, et al.,

Defendants.

Civil Action No. 12-11999-PBS

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
[Docket No. 10]

July 26, 2013

Boal, M.J.

Plaintiffs Sharon Jean Mensah and Eric Mensah ("Plaintiffs") challenge the immigration agencies' decision denying Ms. Mensah's Petition for Alien Relative on the basis that Mr. Mensah had previously entered into a fraudulent marriage. Docket No. 1. Defendants[1] have moved to dismiss this action or, in the alternative, for summary judgment in their favor. Docket

[1] Plaintiffs named as defendants (1) Denis Riordan, Director of the United States Citizenship and Immigration Services Boston Service Center ("USCIS" or "Service"); (2) Alejandro Mayorkas, Director of the USCIS; (3) Janet Napolitano, Secretary of the United States Department of Homeland Security; (4) Eric Holder, Attorney General of the United States; and (5) Carmen Ortiz, the U.S. Attorney for the District of Massachusetts (collectively, the "Defendants"). Holder and Ortiz are not proper defendants in this action. Where, as here, a plaintiff challenges an agency's decision under the Administrative Procedures Act, the proper defendants are "the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703; see also Clayton v. Chertoff, No. C-07-2781 CW, 2007 WL 2904049, at *3 (N.D. Cal. Oct. 1, 2007) (dismissing claims against U.S. Attorney General because the responsibility for implementing the Immigration and Nationality Act resides with the Department of Homeland Security).

No. 10.[2] For the following reasons, this Court recommends that the District Court affirm the decision of the United States Citizenship and Immigration Services.

I. Factual And Procedural Background

Eric Mensah is a native and citizen of Ghana who was most recently admitted to the United States on February 8, 2005 as a B-2 visitor for pleasure. Complaint, ¶ 2; Certified Administrative Record ("AR") 286, 298, 301-302. Mr. Mensah is married to Sharon Jean Mensah, a U.S. citizen. Complaint, ¶¶ 14-15; AR 304. This union represents Ms. Mensah's fourth marriage and Mr. Mensah's third marriage. AR 102-103, 269-71, 286-287.

On June 4, 1987, Mr. Mensah married Maria Mercurio in Agrigento, Italy. AR 106. Their marriage produced one son, Edwin Mensah. Id. On April 28, 2008, Mr. Mensah obtained a divorce from Ms. Mercurio from the State of Connecticut. AR 106-07.

On July 17, 2008, Mr. Mensah married Dianne McCabe, a U.S citizen. AR 104-105. On January 12, 2009, Ms. McCabe filed a Form I-130 petition on behalf of Mr. Mensah to initiate the process for Mr. Mensah to become a lawful permanent resident of the United States. AR 102-103. In support of the petition, Ms. McCabe and Mr. Mensah submitted several documents to establish that their marriage was genuine, including (1) a life insurance policy from Columbian Life Insurance Company in Mr. Mensah's name listing Ms. McCabe as a beneficiary; (2) a property insurance policy in both Mr. Mensah's and Ms. McCabe's names for their alleged residence on Henry Terrace; (3) correspondence from the couple's bank dated May 8, 2009 listing Mr. Mensah and Ms. McCabe as joint holders of a checking account; (4) check cards and

[2] On December 4, 2012, the District Court referred this case to the undersigned for full pretrial proceedings and report and recommendation on all dispositive motions. Docket No. 5.

other membership cards in both Mr. Mensah's and Ms. McCabe's names; (5) photographs of the couple, mostly from their wedding day; and (6) a 2008 tax return filed by Mr. Mensah as "married, filing separately." AR 114-163.

On May 15, 2009, USCIS interviewed Ms. McCabe and Mr. Mensah in connection with Ms. McCabe's I-130 petition. AR 89, 91-93, 97. During the interview, Ms. McCabe was questioned regarding the circumstances of her marriage to Mr. Mensah. Ms. McCabe admitted that her marriage to Mr. Mensah had been fraudulently arranged for immigration purposes, and that she had never intended to enter into a genuine marriage with Mr. Mensah. AR 91-93.

Ms. McCabe signed, and initialed each page of, a statement regarding the circumstances of her marriage to Mr. Mensah. AR 91-93. The statement is in the format of a question-and-answer with the USCIS interviewing officer, Reine El-Achkar. Id. In her statement, Ms. McCabe stated that she was recruited by her home health aide, Ruben Lopes. AR 91. Ms. McCabe stated that Mr. Lopes told her that she could get married and get paid for it. Id. Ms. McCabe explained that she had "seen Ruben and Maxwell together getting clients to get married so they can get their greencards [sic]." Id. Ms. McCabe stated that she was paid "$1,500 at the time I marry [Mr. Mensah], another $1,500 at the immigration interview, and another $1,500 when it was all done." AR 92. Ms. McCabe also stated that while she lived in Worcester, Massachusetts, Mr. Mensah lived in Connecticut with his girlfriend, Stella, who had dropped them off for the interview. Id. When asked if she entered into the marriage knowing that she would not be sharing a life with Mr. Mensah, Ms. McCabe answered, "Yes." Id. When asked if she had ever shared a marital relationship with Mr. Mensah, Ms. McCabe answered, "No." Id.

Ms. McCabe signed the typed statement. AR 93. She also inserted a handwritten note

reading, "Dianna McCabe, (the petitioner) provided testimony on 5/15/09 and this testimony was given freely and voluntarily."[3] Id. Ms. McCabe's initials and signature appear below this handwritten text. Id.

At the interview, Ms. McCabe also submitted a handwritten letter requesting that her Form I-130 petition be withdrawn "because my marriage was not real. I was just helping Eric to get a green card. We did not live together at all. He gave me 1500 to marry him." AR 90. USCIS thereafter terminated Ms. McCabe's Form I-130 petition on behalf of Mr. Mensah. AR 89. Mr. Mensah was placed in removal proceedings before the Boston Immigration Court. AR 6, 279, 286.

On March 8, 2010, Ms. McCabe and Mr. Mensah's divorce became official. AR 266. Mr. and Ms. Mensah were married on March 22, 2010 in Worcester, Massachusetts. AR 304. Ms. Mensah filed an I-130 petition on behalf of Mr. Mensah on May 31, 2010. AR 286-287.

Plaintiffs were interviewed regarding their I-130 petition on September 21, 2010. AR 280. In support of their petition, Plaintiffs submitted the following documents: a bank statement dated September 6, 2010, showing an ending balance of $83.09; a mailing label from the September 13, 2010 issue of Newsweek directed to both Mr. and Mrs. Mensah at their alleged residence on Dewey Street; and a photo album. AR 280-281, 309-310, 313.

On November 30, 2010, USCIS issued a Notice of Intent to Deny ("NOID"), explaining that the agency intended to deny Ms. Mensah's pending I-130 petition because Mr. Mensah's ex-wife, Ms. McCabe, had withdrawn her own Form I-130 petition on behalf of Mr. Mensah "after

[3] The statement included the word "freely" before the word "provided," but the word "freely" has been crossed out. AR 93.

executing a sworn statement in which she admitted that she married Mr. Mensah in exchange for money, that she never lived with him, and that her marriage to him was not real." AR 279.  As a result, Ms. Mensah's pending I-130 petition could not be approved pursuant to 8 U.S.C. § 1154(c), which states that "[n]o petition shall be approved if . . . the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws."  AR 279.  The USCIS also noted that Ms. Mensah had failed to establish the genuine nature of her marriage to Mr. Mensah by "clear and convincing evidence."  AR 281.  The NOID provided the Plaintiffs with thirty days to respond and submit evidence that might overcome the grounds for the intended denial.  Id.

On January 3, 2011, the Plaintiffs timely responded to the NOID with the following documentation to support their claim that Mr. Mensah's marriage to Ms. McCabe had not been fraudulent:

    a.       A one-page affidavit from Ms. McCabe dated December 28, 2010, in which she stated, in relevant part:

> I do hereby swear under oath that my marriage to Eric Mensah was real and that I was not paid any amount of money for the marriage.  Eric is such a wonderful person and I miss him a lot.  He has helped me a lot and has been very supportive in my life especially how he tried his best to get me out of my smoking habit.  We loved each other very much.  He always took good care of me, cooked delicious meals for me and we lived together peacefully as a husband and wife.
>
> On May 15, 2009 I withdrew my petition on his behalf because I was under duress.

AR 221.

b.    An affidavit from Mr. Mensah dated December 5, 2010, in which he asserted that his marriages to Ms. McCabe and Ms. Mensah were both genuine and not entered into to evade immigration laws. AR 243. Regarding Ms. McCabe's sworn statement asserting that she and Mr. Mensah had entered into a sham marriage, Mr. Mensah stated, "I am not sure of the real reason she made that statement." Id.

c.    An application for life insurance from Columbian Life Insurance Company in Mr. Mensah's name listing Ms. McCabe as a beneficiary under the policy. AR 230.

d.    A property insurance policy in both Mr. Mensah's and Ms. McCabe's names for their alleged residence on Henry Terrace, which had been submitted with the original Form I-130 petition. AR 229.

e.    Bank of America correspondence dated March 24, 2009 and May 8, 2009 listing Mr. Mensah and Ms. McCabe as joint holders of a checking account, showing a balance of $505.84 and $1,492.36, respectively. AR 231-232.

f.    A Bank of America account statement for a joint account in Mr. Mensah's and Ms. McCabe's names for the period September 9, 2008 through October 8, 2008, showing a checking account balance of $46.56 and a savings account balance of $19.05. AR 233-235.

g.    Envelopes and magazine covers mailed to the couple's alleged residence on Henry Terrace. AR 225-228, 236-242.

h.    Hearing notices from the couple's divorce proceedings for October 2, 2009 and November 6, 2009. AR 247-248. A handwritten note on the October 2, 2009 hearing notice states, "Dianne refused to appear at this hearing i.e. on 10/2/09

because she didn't want to give me the divorce. According to her she was still in love and didn't want to let me go." AR 247.

Plaintiffs also included the following documentation to support their claim that their own marriage was bona fide:

a. An affidavit from Ms. Mensah dated December 29, 2010 discussing her relationship with her husband and asserting their marriage was genuine. AR 245-246.

b. Affidavits from family friends and Ms. Mensah's daughter asserting that the couple's marriage appeared genuine. AR 253-255.

c. A Columbian Life Insurance Company "Application for Policy Changes" signed by Mr. Mensah listing Ms. Mensah as beneficiary, dated April 2, 2010. AR 249-252.

d. A vehicle registration for a car registered in Mr. Mensah's name at the Dewey Street address. AR 256.

e. A lease for the couple's residence on Dewey Street listing both Mr. and Ms. Mensah as lessees, dated December 1, 2010. AR 257-265.

f. A gas bill in both Mr. and Ms. Mensah's names for the Dewey Street residence dated December 14, 2010. AR 272-273.

g. A Newsweek magazine cover, envelope from Kwadjo Kess, and promotional offer from Bloomberg Businessweek addressed to both Mr. and Ms. Mensah at the Dewey Street address. AR 274-276.

On January 11, 2011, USCIS denied the Form I-130 petition. AR 214-217. The agency

determined that Mr. Mensah was subject to the marriage fraud bar of 8 U.S.C. § 1154(c) and found that Ms. McCabe's December 28, 2010 affidavit retracting her admission to marriage fraud was insufficient to overcome her earlier statements.  AR 215.  USCIS explained that Ms. McCabe's "assertion that she withdrew the petition under some sort of duress [was] unsupported by the record, and her assertion that the marriage was bona fide [was] far outweighed by her earlier detailed sworn testimony regarding the male fide nature of the marriage."  Id.  Moreover, the evidence submitted to demonstrate the genuine nature of Mr. Mensah's and Ms. McCabe's marriage was "not compelling."  Id.  Alternatively, USCIS concluded that Ms. Mensah had failed to meet her burden of proving that her present marriage to Mr. Mensah was genuine by clear and convincing evidence, as required by 8 U.S.C. § 1255(e)(3).  AR 215. For instance, USCIS pointed out, "The residential lease you submitted was generated after you were issued USCIS' letter of November 30, 2010.  You have not established that you and Mr. Mensah have shared a residence during the entire period of your marriage."  AR 216.

     Ms. Mensah appealed the denial of her Form I-130 petition to the Board of Immigration Appeals ("BIA" or "Board").  AR 167.  However, the BIA dismissed the appeal on January 12, 2012, affirming USCIS' determination that Mr. Mensah had entered into his marriage with his second wife, Dianne McCabe, for the purpose of evading the immigration laws and that 8 U.S.C. § 1154(c) consequently barred approval of Ms. Mensah's petition for her husband.  AR 6-7.  In its decision, the BIA noted that "neither [Ms. McCabe's] December 28, 2010, affidavit stating that her marriage was real and that she withdrew the petition under duress nor the documentary evidence submitted in support of the marriage

outweigh the earlier statement indicating that the marriage is a sham." AR 7. Resting on this marriage fraud holding, the Board concluded that it "need not determine whether the petitioner provided clear and convincing evidence that her marriage to the beneficiary is bona fide." Id.

Ms. Mensah filed a timely motion to reopen or reconsider the decision with the BIA on February 22, 2012, along with a new affidavit from Ms. McCabe. AR 20, 22-78. In this new affidavit, dated February 7, 2012, Ms. McCabe declared that she had been suffering from anxiety disorder as well as under the influence of numerous medications at the time of the USCIS interview on May 15, 2009 at which she stated that her marriage to Mr. Mensah had been a sham. AR 33. Ms. McCabe repeated her claims that USCIS officers intimidated her into making her statement, this time asserting that she was told she would face jail time if she did not admit she was not in a good-faith marriage with Mr. Mensah. Id. She also stated, "I signed a form during the interview that I did not read. I did not have my glasses with me at the time, and I would have done anything to leave the room because I was afraid and intimidated. I do not know the contents of the document I signed during the interview." Id.

The BIA denied the motion on August 30, 2012, holding that the evidence relating to Ms. McCabe's medical condition was not new or unavailable at the time it made its earlier decision, that the motion repeated arguments made earlier to both USCIS and the BIA, and that the motion did not demonstrate that the BIA's earlier decision was erroneous. AR 10.

On October 26, 2012, Plaintiffs[4] filed the instant action. Docket No. 1.

---

[4] Defendants argue that Mr. Mensah is not a proper plaintiff in this action because he has no standing to challenge the immigration agencies' decision. Docket No. 11 at 23 n. 3. Plaintiff disagrees. Docket No. 15 at 8. Courts have generally held that only the petitioner, not the

## II. Analysis

### A. Standard Of Review

As a preliminary matter, the Court must establish the appropriate standard of review. The Defendants argue that the District Court should dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Plaintiffs have failed to allege facts sufficient to show the decision was arbitrary and capricious. Docket No. 11 at 1, 14; Docket No. 16 at 2-7. In the alternative, the Defendants seek summary judgment in their favor because the administrative record establishes that the agency's decision was supported by substantial and probative evidence. Id. at 1, 16-25. Plaintiffs, on the other hand, argue that they have stated a plausible claim for relief and that there are genuine issues of material fact that preclude summary judgment. Docket No. 15 at 5-6, 7. Neither party is correct.

The Court's jurisdiction in this matter arises under the provisions of the Administrative Procedures Act ("APA"), which provides for judicial review of final agency actions. 5 U.S.C. § 706; Atieh v. Riordan, __ F.3d __, 2013 WL 3156511, at *2 (1st Cir. June 24, 2013). A reviewing court may only set aside agency actions, findings and conclusions if they are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" or "unsupported by substantial evidence." Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 72 (1st Cir. 2006) (quoting 5 U.S.C. § 706(2)). Substantial evidence

---

beneficiary, can appeal a decision on a visa petition. See, e.g., Echevarria v. Keisler, 505 F.3d 16, 20 (1st Cir. 2007) (citing 8 C.F.R. § 103.3(a)(1)(iii)(B)); Grant v. United States Citizenship and Immigration Serv., No. WMN-09-2251, 2010 WL 3190790, at *1 (D. Md. Aug. 11, 2010); but see Lockhart v. Chertoff, No. 1:07CV823, 2008 WL 80225, at *5 (N.D. Ohio Jan. 7, 2008). In any event, Ms. Mensah has standing in this matter so the Court proceeds to the merits of their challenge.

means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). An agency decision fails to meet this standard if the administrative record reveals that "the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise." Atieh, 2013 WL 3156511 at *2 (citations omitted).

"Review under the arbitrary and capricious standard is narrow and this Court may not substitute its judgment for that of the agency, even if it disagrees with the agency's conclusions." River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009) (citation omitted). Accordingly, review under the APA is highly deferential and the agency's actions are presumed to be valid. Id. (citation omitted). If the agency's decision is supported by a rational basis, the Court must affirm. Id. (citations omitted).

The plausibility standard applicable to motions to dismiss does not apply to a complaint for judicial review of a final agency action. Atieh, 2013 WL 3156511 at *3. For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record," Lovgren v. Locke, 701 F.3d 5, 20 (1st Cir. 2012), and the "'entire case' on review is a question of law." Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citation omitted). Thus, a district court's role in considering summary judgment "in a case governed by the APA is not to resolve contested fact questions which may exist in the underlying administrative record, but rather to determine the legal question of whether the agency's action was arbitrary and capricious." Northwest Bypass Group v. United States Army Corps of Eng'rs,

552 F. Supp. 2d 97, 107 (D.N.H. 2008) (internal quotations omitted); see also Commonwealth Dep't of Pub. Welfare v. Sec. of Agriculture, 984 F.2d 514, 525 (1st Cir. 1993) (explaining that the relevant inquiry "is not whether the facts [can establish some dispute], but rather, whether the administrative record, now closed, reflects a sufficient dispute concerning the factual predicate on which [the agency] relied . . . to support a finding that the agency acted arbitrarily or capriciously.").

B. Immediate Relative And Adjustment Of Status Process

The Immigration and Nationality Act ("INA") allows certain relatives of United States citizens to obtain lawful permanent resident status based on a family relationship. Taing v. Napolitano, 567 F.3d 19, 21 (1st Cir. 2009) (citing 8 U.S.C. § 1151(a)(1)). A United States citizen may petition for an alien spouse by filing a Form I-130 Petition for Alien Relative on behalf of the alien spouse (or "beneficiary") to have him or her classified as an "immediate relative," a category of aliens entitled to immigrant visas. See id. (citing 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2(a)). "Immediate relatives" are defined as "the children, spouses, and parents of a citizen of the United States," and are not subject to the annual quotas for immigrant visas imposed on other family-based immigration classifications. 8 U.S.C. § 1151(b)(2)(A)(i).

In connection with an I-130 petition, the petitioner carries the burden of proving the claimed relationship by a preponderance of the evidence. Koffi v. Holder, No. 3:09cv2102, 2011 WL 2896049, at *2 (D. Conn. Jul. 18, 2011) (citing Matter of Brantigan, 11 I. & N. Dec. 493, 495 (BIA 1966); Egan v. Weiss, 119 F.3d 106, 107 (2nd Cir. 1997)). "The substantive question is, whether, at the time of the marriage, there was an 'inten[t] to establish a life together.'"

Rodriguez v. Immigration and Naturalization Serv., 204 F.3d 25, 27 (1st Cir. 2000) (citation omitted); see also Cho v. Gonzalez, 404 F.3d 96, 102 (1st Cir. 2005). The marriage "is legitimate so long as this standard is met, even if securing an immigration benefit was *one* of the factors that led [the beneficiary] to marry." Cho, 404 F.3d at 102-103 (emphasis in original).

C. Marriage Fraud

Pursuant to INA § 204(c), no immigrant visa petition should be approved if:

> the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading immigration laws.

8 U.S.C. § 1154(c). "Even if the current marriage is unquestionably bona fide, the visa petition cannot be approved if the beneficiary has previously had an I-130 application filed on his behalf that was based on a fraudulent marriage." Diaz v. United States Citizenship and Immigration Servs., 499 Fed. Appx. 853, 856 (11th Cir. 2012) (citing Matter of Kahy, 19 I. & N. Dec. 803, 805 n. 2 (BIA 1988)); see also Osunsanya v. United States Citizenship and Immigration Servs., No. 06-10625-RWZ, 2007 WL 484864, at *2 (D. Mass. Feb. 12, 2007) (citing Coelho v. Gonzales, 452 F.3d 104, 109 n. 9 (1st Cir. 2006)) ("Once the Attorney General determines an individual has committed marriage fraud, this ineligibility for status adjustment cannot be waived.").

When determining that a visa petition should be denied based on marriage fraud, the USCIS ordinarily should not give conclusive effect to determinations made in prior proceedings, but should make an independent conclusion based on the evidence of record. Matter of Tawfik, 20 I. & N. Dec. 166, 168 (BIA 1990). Evidence of intent at the time of the marriage may include "proof that the beneficiary has been listed as the petitioner's spouse on insurance policies,

property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." Diaz, 499 Fed. Appx. at 856 (quoting Matter of Laureano, 19 I. & N. Dec. 1, 2-3 (BIA 1983)).

If the marriage takes place during the pendency of "administrative or judicial proceedings regarding the alien's right to be admitted or remain in the United States," the alien may receive immediate adjustment of status based on the spousal relationship only if he demonstrates, by clear and convincing evidence, that marriage was bona fide." Conteh v. Gonzales, 461 F.3d 45, 64 (1st Cir. 2006) (citing 8 U.S.C. §§ 1255(e)(2), 1255(e)(3)).

D. The BIA's Marriage Fraud Finding Was Supported By Substantial Evidence

After reviewing the record, this Court finds that USCIS did not act in an arbitrary or capricious manner in finding that Mr. Mensah's marriage to Ms. McCabe was fraudulent because that finding was supported by substantial evidence. Ms. McCabe provided a statement to immigration authorities that her marriage to Mr. Mensah was not real and had been entered into solely so that Mr. Mensah could obtain immigration benefits. AR 91-93. In the statement, Ms. McCabe provided a number of details regarding the circumstances surrounding the marriage that lend credibility to her account of marriage fraud. For example, Ms. McCabe stated that she was recruited by her home health aide, Ruben Lopes, to participate in a marriage fraud scheme that Mr. Lopes ran along with another man named Maxwell. AR 91. She stated that Maxwell owns a store in Main Street and that she had seen Maxwell and Ruben getting clients together to get married so that they can obtain their green cards. Id. She also stated that she was paid $1,500 at the time she married Mr. Mensah, and that she would be paid another $1,500 after the immigration interview, and $1,500 when it was all done. AR 92. She also explained that she

never lived with Mr. Mensah, that Mr. Mensah lived in Connecticut with his girlfriend Stella, and that Stella had dropped both of them at the immigration interview. Id.

The Plaintiffs argue that the BIA's decision was not supported by substantial and probative evidence because the BIA did not accord any weight to Ms. McCabe's subsequent recantation of her marriage fraud admission. Docket No. 15 at 5-7. However, in reviewing the agency decision, this Court is not permitted to reweigh the evidence, but is instead limited to determining whether the agency's determination was not supported by substantial evidence. See Baystate Alternative Staffing, Inc. v. Reich, No. 97-40012-NMG, 1997 WL 815391, at *3 (D. Mass. Oct. 24, 1997) ("[T]he reviewing court must determine whether the evidence in the record supports the agency's decision without reweighing the evidence or substituting its judgment for that of the agency."). The Court finds that the BIA's decision was supported by substantial evidence under the circumstances. The BIA was permitted to make the credibility determination that Ms. McCabe's May 2009 admission was more reliable than the subsequent recantation. In her first declaration retracting her admission of marriage fraud, dated December 28, 2010, Ms. McCabe merely asserts that she withdrew her petition because she was "under duress." AR 221. She provides no more explanation. In her subsequent declaration, dated February 7, 2012, Ms. McCabe states that she felt "intimidated" by the USCIS, that they took her answers "out of context," that she did not have her glasses with her and that she did not read the contents of the May 2009 statement before she signed it.[5] AR 33. However, she never denies that the contents

[5] The Plaintiffs argue that the Board failed to take into account the February 7, 2012 affidavit in connection with Ms. Mensah's motion to reopen and reconsider the Board's January 12, 2012 decision. Docket No. 15 at 8. A motion to reopen before the Board must be denied unless the petitioner satisfies two threshold requirements: (1) she must "establish 'a prima facie case for the underlying substantive relief sought,'" and (2) she must "introduce 'previously

of the prior statement are untrue or states that the USCIS officers fed her the detailed story about how she came to marry Mr. Mensah. She does not state where the facts about the marriage arrangement came from or refute them with any specificity. Although she claims that she did not have her glasses and thus could not read the statement, the Court notes that the portion of her statement that she provided testimony freely and voluntarily and her letter withdrawing her I-130 petition were handwritten in what appears to be her own handwriting. Ms. McCabe has not stated that someone else wrote those statements. AR 90, 93. Accordingly, the Court finds that the BIA's determination that Ms. McCabe's May 2009 admission was more reliable than the subsequent recantations is not arbitrary or capricious and is supported by substantial evidence.

Similarly, the other evidence submitted to support Mr. Mensah's allegations that his marriage to Ms. McCabe was not fraudulent is of limited probative value. The USCIS reasonably pointed that the envelopes and magazine covers addressed to Mr. Mensah and Mr. McCabe offer limited probative value in showing that the marriage was entered in good faith; that the one joint bank account statement submitted showed little activity and was thus not compelling evidence of commingled finances; and the life insurance documents submitted were only applications and there was no evidence that the applications were actually submitted or the policies maintained. AR 215-216. In light of Ms. McCabe's May 2009 statement and the meager evidence in the record to support a finding that the marriage between Mr. Mensah and Ms. McCabe was bona fide, the Court finds that there was a rational basis for the agency's

---

unavailable, material evidence.'" Mabikas v. I.N.S., 358 F.3d 145, 148 (1st Cir. 2004) (citations omitted). Here, the Board found that the evidence presented was not new or unavailable. AR 10. In any event, the Board also found that the same arguments had been made before both to the District Director and the Board and were rejected based on Ms. McCabe's detailed statements. Id.

finding of marriage fraud.

      E.      The Court Lacks Jurisdiction To Hear Plaintiffs' Challenge To
             The USCIS' Denial Of A "Bona Fide Marriage Exemption" In Their Case

The Plaintiffs also challenge USCIS's determination that they had failed to establish the genuine nature of their own marriage by clear and convincing evidence and therefore were not entitled to a "bona fide marriage exception" to the restrictions of 8 U.S.C. § 1154(g) for marriages entered into during removal proceedings.[6] See Docket No. 15 at 9-10. The Defendants argue that this Court lacks jurisdiction to hear this challenge. Docket No. 11 at 21-22. This Court agrees.

Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security. . ." The bona fide marriage exemption is available "if the alien establishes by clear and convincing evidence *to the satisfaction of the Attorney General*[7] that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of procuring the alien's admission as an immigrant and no fee or other consideration

---

[6] The BIA's decision on appeal did not reach the issue of whether Plaintiffs were entitled to the bona fide marriage exception. AR 7 (explaining that, because the BIA affirmed USCIS's marriage fraud finding, it would "not determine whether the petitioner provided clear and convincing evidence that her marriage to the beneficiary is bona fide.").

[7] While Section 1255 refers to the Attorney General, the authority to approve adjustment of status petitions has been transferred by statute to the Secretary of Homeland Security and the USCIS. 6 U.S.C. § 271(b)(5); see also Barenboy v. Napolitano, No. 09-cv-3082, 2010 WL 815285, at *1 n. 1 (E.D. Pa. Mar. 1, 2010). Thus, references to the Attorney General "shall be deemed to refer to the Secretary." 6 U.S.C. § 557.

was given." 8 U.S.C. § 1255(e)(3) (emphasis added). The language "to the satisfaction of the Attorney General" leaves the decision on a bona fide marriage exception to the agency's discretion and renders the decision unreviewable by this Court. See Caso-Giraldo v. U.S. Attorney General, 400 Fed. Appx. 513, 516 (11th Cir. 2010); Barenboy v. Secretary U.S. Dep't of Homeland Security, 411 Fed. Appx. 512, 515 (3rd Cir. 2010).

Even if the Court had jurisdiction to review the USCIS's decision that the Plaintiffs failed to show that their marriage is bona fide, the Court finds that such a decision was not arbitrary and capricious. Plaintiffs supported their Form I-130 petition with such documentation as a photo album; their affidavits and affidavits from family friends; an application to amend Mr. Mensah's life insurance policy to make Ms. Mensah his beneficiary; envelopes and magazines addressed to both Mr. and Mrs. Mensah at the address on Dewey Street; a lease in both of Mr. Mensah and Ms. Mensah's name for their alleged residence; a bank statement from the period August 7, 2010 to September 6, 2010, showing a balance of $83.09; and a gas bill dated December 14, 2010. AR 245-276, 280-81, 309-310. USCIS reasonably concluded that such evidence is insufficient to meet the heightened standard of "clear and convincing evidence" that applies to marriages entered into during removal proceedings under 8 U.S.C. § 1255(e)(3). As the USCIS pointed out in its decision, the Mensahs did not submit evidence that they had joint medical, automobile or other insurance; and the residential lease they submitted was generated after the USCIS NOID letter and thus does not prove that the couple lived together prior to December 1, 2010. AR 216. In addition, there was no evidence that Mr. Mensah had actually submitted the application to make Ms. Mensah a beneficiary under his life insurance policy. Id. Besides their own affidavits and that of family friends and relatives, which did not contain much

detail about their relationship, Plaintiffs failed to adduce any objective evidence of shared activities, experiences or pursuits as would be expected of a genuinely married couple. Accordingly, the Court finds that the USCIS's determination that the Plaintiffs failed to show that their marriage was bona fide was rational and the Court recommends that the District Court affirm the immigration agencies' decisions.

III.    Recommendation

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant Defendants' motion for summary judgment, affirm the immigration agencies' decisions denying the Plaintiffs' Form I-130 petition and dismiss this action.

IV.    Review By District Judge

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d

343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE